UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

| | |
|---|---|
| FELICE MANCARUSO, | **SECOND AMENDED COMPLAINT** |
| Plaintiff, | |
| - against – | Case No. 07 Civ. 6776 (KMK)(GBY) |
| PHILIPS SEMICONDUCTORS, NXP SEMICONDUCTORS and PHILIPS ELECTRONICS NORTH AMERICA, | ECF CASE |
| Defendants. | **JURY TRIAL REQUESTED** |

------------------------------------------------------------------X

Plaintiff, FELICE MANCARUSO, by and through his attorneys, VANDENBERG & FELIU, LLP, as and for his Second Amended Complaint, alleges the following:

## INTRODUCTION

1. This is an action for injunctive and declaratory relief, back pay, front pay, unpaid bonus, liquidated damages, compensatory and punitive damages, attorneys' fees, costs and other relief to redress employment discrimination on the basis of age, breach of contract, and breach of New York State wage payment laws. This action is brought pursuant to the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 et seq. ("ADEA"), which incorporates by reference Section 16(b), 29 U.S.C. §216(b), of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq.; the New York State Wage Payment Law, McKinney's Labor Law, Section 190 et seq. (the "Labor Law"), and the New York State Human Rights Law, McKinney's Executive Law, Section 290 et seq. (the "Human Rights Law").

## JURISDICTION AND VENUE

2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(4) and 2201, as well as 29 U.S.C. §626(b) and (c). In addition, plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a).

3.  Venue is properly laid in this district pursuant to 28 U. S. C. § 1391(b) in that the unlawful employment practices alleged below were committed within this district.

## PARTIES

4.  During all relevant times herein, plaintiff was a resident of the State of New York, County of Dutchess, and was employed by defendants in Hopewell Junction, New York.

5.  Defendant Philips Semiconductors (hereinafter "defendant Philips Semiconductors") is a for-profit corporation authorized to do business in New York State, is engaged in the business of manufacturing semiconductors, system solutions and software for numerous consumer products, including mobile phones, personal media players, TVs, set-top boxes, identification applications, cars and a wide range of other electronic devices, and maintains a place of business located in Hopewell Junction, New York.

6.  Upon information and belief, defendant Philips Semiconductors employs over 20 employees and is an employer within the meaning of Section 11(b) of the ADEA, 29 D.S.C. §630(b); and Section 292 of the Human Rights Law.

7.  Defendant NXP Semiconductors (hereinafter "defendant NXP") is a for-profit corporation authorized to do business in New York State, is engaged in the business of manufacturing semiconductors, system solutions and software for numerous consumer products,

including mobile phones, personal media players, TVs, set-top boxes, identification applications, cars and a wide range of other electronic devices, and maintains a place of business located in Hopewell Junction, New York.

8. Upon information and belief, defendant NXP employs over 20 employees and is an employer within the meaning of Section 11(b) of the ADEA, 29 D.S.C. §630(b); and Section 292 of the Human Rights Law. Defendant NXP is a successor to defendants Philips Semiconductors.

9. Defendant Philips Electronics North America (hereinafter "defendant PENA") is a for-profit corporation authorized to do business in New York State, is engaged in the business of manufacturing semiconductors, system solutions and software for numerous consumer products, including mobile phones, personal media players, TVs, set-top boxes, identification applications, cars and a wide range of other electronic devices, and maintains a place of business located in Hopewell Junction, New York.

10. Upon information and belief, defendant PENA employs over 20 employees and is an employer within the meaning of Section 11(b) of the ADEA, 29 D.S.C. §630(b); and Section 292 of the Human Rights Law.

11. Collectively, defendants Philips Semiconductors, NXP Semiconductors and PENA are an integrated enterprise. All are responsible for the illegal conduct directed at plaintiff

**ADMINISTRATIVE HISTORY**

12. Plaintiff filed a charge of employment discrimination against defendants and their predecessors based on age and disability with the United States Equal Opportunity

Employment Commission (hereinafter "EEOC") on or February 24, 2006, which was within 300 days of the last incident of discrimination.

13. On or about March 27, 2007, following a thorough investigation, the EEOC issued a Determination, which stated its conclusion that probable cause existed to believe that defendants reasons for terminating plaintiff's employment were pretextual and that plaintiff was subjected to age discrimination.

14. On or about April 30, 2007, EEOC issued plaintiff a Notice of Right to Sue, which was received by plaintiff shortly thereafter. This Second Amended Complaint was initiated within 90 days of plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTUAL ALLEGATIONS

15. Plaintiff was hired as an engineer by the defendants' Semiconductor facility in Fishkill, N.Y. in July 1995.

16. During his ten-year career at this plant, Plaintiff performed in a satisfactory manner, receiving multiple promotions and being granted stock options and stock grants given only to key employees. Plaintiff was meeting the legitimate expectations of defendants' management.

17. After one year, Plaintiff was promoted to an engineering manager position, managing a team of 10 to 12 semiconductor engineers.

18. Plaintiff successfully worked as a first line engineering manager for the next few years covering several areas, including "wets processes" and "metals/insulators processes." Plaintiff handled these jobs successfully.

19. Plaintiff was then promoted to a mid-level management position as a "Mini-Fab Manager," responsible for all engineering, maintenance and manufacturing for the metals/insulators process.

20. As "Mini-Fab Manager," Plaintiff managed a team which covered the plant 24 hours per day, seven days per week, and consisted of more than 100 employees, including 5 managers/supervisors, 10 engineers, 40 maintenance technicians and 50 operators.

21. During his time as "Mini-Fab Manager," Plaintiff also held several other leadership positions, including (1) Chair of the Philips Semiconductors Worldwide Technical Cluster Team for Metals/Dielectrics processes, (2) Team Leader to implement the plant maintenance portion of a new SAS enterprise resource planning system called SPEED PM, (3) Team Leader of the SCANDO factory organization team and (4) Team Leader of the factory spare parts team.

22. As Chair of the Philips Semiconductors Worldwide Technical Cluster Team for Metals/Dielectrics processes, Plaintiff led a team of engineers from every Philips semiconductor site worldwide to oversee the equipment and processes used by Philips, and reported directly to a corporate management team in the Netherlands.

23. As Team Leader to implement the plant maintenance portion of a new SAS enterprise resource planning system called SPEED PM, Plaintiff led a team of 6 to 8 factory engineers. He also led a team of 6 to 8 factory engineers in his role as Team Leader of the spare parts team.

24. As Team Leader of the SCANDO team, Plaintiff led a team of 10 to 12 maintenance and production employees.

25. Plaintiff was so effective as a Team Leader for the SCANDO and the spare parts team that these teams were victorious in the Philips Fishkill Quality Team competition. These teams were then sent by Philips to compete against other Philips teams in a Regional competition.

26. Plaintiff observed during his employment that Philips often implemented work force reductions, eliminating older employees, including older engineers, from the work force, while continuing to actively advertise for and recruit younger engineers and recent graduates of engineering programs.

27. When he asked at management meetings why Philips would eliminate older workers, but continue to hire and recruit engineers who were much younger, Plaintiff was told that the younger engineers were being hired for "Vitality Hire" positions.

28. On information and belief, the older workers who were being let go were not eligible for or considered by Philips to be eligible for the "Vitality Hire" positions. The "Vitality Hire" positions were reserved for younger engineers, under the age of 40.

29. Defendants used the "Vitality Hire" positions to discriminate against older workers on the basis of age.

30. In or about late 2004, Philips installed a new leadership team at Fishkill.

31. The new leadership team valued younger, less experienced engineers more than older, more experienced engineers.

32. The new leadership team maintained the pretext of hiring younger individuals into "Viatality Hire" positions, to the detriment of Plaintiff.

33. The new leadership team first stripped Plaintiff of his management responsibilities and placed him in a staff position where he was to work full time in his role as

Cluster Team chair, SCANDO Team Leader, Spare Parts Team Leader and SPEED PM Team Leader.

34. Plaintiff continued to perform his job in a satisfactory manner, meeting the legitimate expectations of defendants.

35. Nevertheless, after approximately 10 months, Plaintiff was informed that his job was being "eliminated."

36. The "elimination" of Plaintiff's position was a pretext to discriminate against him on the basis of age.

37. Following the elimination of his position, but before his employment ended, Plaintiff applied for open engineering positions that were posted on the Philips web site. He interviewed for positions as a process engineer and an equipment engineer.

38. Plaintiff was qualified to perform these jobs.

39. During the interview process Plaintiff made it clear that he was willing to take a significant cut in pay and level to remain an employee of defendants.

40. Plaintiff was rejected for the positions for which he applied.

41. Plaintiff was not offered these positions because of his age.

42. Defendants hired and have continued to hire younger engineers, while at the same time terminating a large number of engineers age 40 and older, on the basis of age.

43. On or about September 28, 2005, Plaintiff attended a meeting with other individuals whose jobs had been "eliminated". The meeting was run by an employee of defendants in the Human Resources department.

44. During the meeting, Plaintiff was offered a severance package. As an inducement to accept the severance package and sign the release which accompanied it, plaintiff

and others in the group were also told by the Human Resources representative that they would receive a bonus from defendants for the work they performed in 2005.

45. Plaintiff and the other employees in the meeting were also told that they would receive their 2005 bonus in or about March 2006.

46. Defendants also made a written promise, in the severance offer, that plaintiff would receive a bonus for 2005.

47. Despite this contractual promise, plaintiff was denied a bonus for 2005.

## AS AND FOR A FIRST CAUSE OF ACTION

48. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 47 of this Second Amended Complaint as if fully set forth herein.

49. Defendants acts, practices, and policies described herein constitute willful discrimination against Plaintiff on the basis of his age, thereby denying him equal employment opportunities in violation of 29 U.S.C. §621 *et seq*.

## AS AND FOR A SECOND CAUSE OF ACTION

50. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 49 of this Second Amended Complaint as if fully set forth herein.

51. Defendants' acts, practices, and policies described herein constitute intentional discrimination against plaintiff on the basis of his age, in violation of the Human Rights Law.

## AS AND FOR A THIRD CAUSE OF ACTION

52. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 51 of this Second Amended Complaint as if fully set forth herein.

53. Defendants' failure to pay plaintiff a bonus for 2005 was in violation of express promises made both orally and in writing, and constitutes a breach of contract.

## AS AND FOR A FOURTH CAUSE OF ACTION

54. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 53 of this Second Amended Complaint as if fully set forth herein.

55. The 2005 bonus promised to plaintiff constitutes "wages" as defined by section 190 of the Labor Law.

56. Defendants' failure to pay the bonus constitutes a violation of the Lbor Law, including section 191 of the Labor Law.

57. Defendants' failure to pay the bonus was willful as that term is defined in section 198 of the Labor Law, entitling plaintiff to liquidated damages in the amount of 25% of the amount due.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare, adjudge and decree that defendants willfully discriminated against plaintiff on the basis of his age, in violation of in violation of 29 U.S.C. §§621 et seq.

2. Declare, adjudge and decree that defendants willfully discriminated against plaintiff on the basis of his age, in violation of the Human Rights Law of the State of New York.

3. Declare, adjudge and decree that defendants committed a breach of contract in violation of express promises made both verbally and in writing.

4. Declare, adjudge and decree that defendants willfully violated the Labor Law by failing to pay plaintiff a 2005 bonus.

5. Order defendants to reinstate plaintiff with full seniority all other benefits, and or, in the alternative, award plaintiff front pay, plus interest thereon, that plaintiff is unable to earn as a result of defendants' willful discriminatory actions.

6. Order defendants to pay plaintiff damages in the amount equal to the value of all back pay and lost benefits, plus interest thereon, that plaintiff lost as a result of defendants' willful discriminatory actions.

7. Order defendants to pay plaintiff damages in an additional "amount of liquidated damages equal to the value of all back pay, plus interest thereon, that plaintiff lost as a result of defendants' willful actions, pursuant to 29 U.S.C. §626(b) incorporating 29 U.S.C. §216, a provision of the Fair Labor Standards Act.

8. Order defendants to pay "an additional amount as liquidated damages equal to twenty-five percent of the total amount of the wages found to be due" pursuant to Labor Law section 198(1-a).

9. Enjoin defendants from engaging in further discriminatory and other unlawful actions against plaintiff.

10. Award plaintiff compensatory damages.

11. Award plaintiff punitive damages.

12. Award plaintiff all costs and reasonable attorney's fees incurred in connection with this action.

13. Award such other and further relief as this Court may deem just and proper.

Dated: December 20, 2007
      New York, New York

           VANDENBERG & FELIU, LLP

By: _____
Christopher A. D'Angelo (CD-7081)
110 East 42nd Street, Suite 1502
New York, New York 10017
Tel: (212) 763-6800
Fax: (212) 763-6810

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

FELICE MANCARUSO,

                                Plaintiff,

   - against –

PHILIPS SEMICONDUCTORS, NXP
SEMICONDUCTORS and PHILIPS ELECTRONICS
NORTH AMERICA,

                                Defendants.

-------------------------------------------------------------------X

**Case No. 07 Civ. 6776
(KMK)(GBY)**

**AFFIRMATION OF SERVICE**

      CHRISTOPHER A. D'ANGELO, being an attorney admitted to practice in New York hereby affirms:

      1.    On December 20, 2007, a true copy of the SECOND AMENDED COMPLAINT, was served by first class mail, postage prepaid, on the following:

        BLEAKEY PLATT & SCHMIDT, LLP
        Michael P. Benenati (MPB-9669)
        Joseph DeGiuseppe, Jr. (JD-6376)
        One North Lexington Avenue
        White Plains, New York 10601
        Tel: (914) 949-2700
        Fax: (914) 683-6956

Dated: New York, New York
       December 20, 2007

                                                _____
                                                Christopher A. D'Angelo (CD-7081)